UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON DALE MEADOR,<br><br>    Plaintiff,<br><br>v.<br><br>SELLERS,<br><br>    Defendant. | Case No. 1:14-cv-00006-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NOS. 30, 36, & 38)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

    Gordon Meador ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 4). Defendants declined to consent to magistrate judge jurisdiction. (ECF No. 53).

    The Court previously screened Plaintiff's complaint before any defendants appeared.[1] (ECF No. 36). The Court found that Plaintiff stated a cognizable claim for deliberate indifference in violation of the Eighth Amendment against defendants Garza, Sellers, Aye, Moon, Nguyen, Clark, Kim, Smith and Gill, and dismissed all other claims and defendants. (ECF Nos. 36 & 38). Prior to the Court dismissing claims and defendants, Plaintiff agreed to proceed only on the claims found cognizable by the Court. (ECF No. 37).

    Following a stipulation for dismissal and a summary judgment motion, the case now proceeds only against defendant Sellers. (ECF Nos. 81 & 145).

    As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss defendants consistent with the order by the magistrate judge

---

[1] Magistrate Judge Dennis L. Beck was the assigned magistrate judge until September 8, 2016. (ECF No. 92).

1

at the screening stage.

## I. WILLIAMS V. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, Defendants were not served at the time the Court issued its order dismissing claims, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss Plaintiff's claims based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims previously dismissed by this Court, for the reasons provided in the Court's screening order.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that… the action or appeal… fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff names as defendants: Kihn Aye, M.D.; Jong Moon, M.D.; Huu Nguyen, M.D.; Edgar Clark, M.D.; Julian Kim, M.D.; Richard Smith, M.D.; Jeffrey Wang, M.D.; Ravijot Gill, D.O.; Garza, L.V.N.; Sellers, L.V.N., and Does 1-50.

Plaintiff was housed at Corcoran State Prison ("CSP") when the events giving rise to this action took place. Plaintiff alleges the following.

Plaintiff suffers from chronic lower back pain as a result of normal wear and tear and a motorcycle accident prior to imprisonment. In or around May of 2012, Plaintiff was diagnosed with spondylolysis and/or spondylolisthesis at the L5-S1 vertebrae of his spine.

In or around the spring of 2012, Plaintiff was transferred from California State Prison–

Sacramento to CSP. Between April 2012 and February 2014, the named defendants provided medical treatment to Plaintiff. Plaintiff claims all named defendants knew or should have known of Plaintiff's medical conditions and personal history.

Plaintiff claims CSP's medical facility and instruments were unsanitary and staff did not take the precautions necessary to sterilize the environment and all medical tools. Staff administered a series of injections and IV treatments to Plaintiff using the unsanitary equipment and he developed a severe infection of the spine referred to as discitis/osteomyelitis. In May or June of 2012, Plaintiff presented symptoms of discitis/osteomyelitis in his spine, including severe and debilitating pain that impeded him from walking. For more than eight months, Plaintiff was not provided the examinations, monitoring, and testing required to identify and treat the disease. The infection was finally identified and treated by medical professionals outside of CSP when they fortuitously identified the disease while treating him for an unrelated heart-related problem.

Commencing in April of 2012, Plaintiff made a series of complaints about this new back pain that affected his ability to walk and bend or lift his left leg. He reported suffering from chills. In response, he was given a walker. In May of 2012, the back pain became unbearable and he filed an emergency medical appeal. He was examined by medical staff and told the pain was caused by a torn oblique muscle. He was not provided special housing for his pain. Plaintiff continued to complain of abnormal back pain and an inability to move, sit, and walk. He was bed ridden and authorized to eat and stay in his cell. He frequently cried and hyperventilated in response to the pain that he rated a 10 out of 10. He advised medical staff that these were new complaints. Medical staff determined that the degree of pain claimed by Plaintiff exceeded their findings and found that he was not a surgical candidate, but instead was acting "irrational." Staff informed Plaintiff that he had a crushed disc in his back, and the pain was muscular in origin. They recommended he exercise more frequently and gave him a pamphlet regarding back pain. They prescribed additional pain, anti-inflammatory, and muscle relaxant medications.

In July or August of 2012, Plaintiff could no longer move or stand without assistance.

He reported severe back pain that radiated into his chest and affected his abilities to move his left leg and walk. He fell down while alone in his cell on several occasions, severely injuring his back on the toilet on one occasion. He fell because he was confined to a cell without the assistance required to move in light of his spinal infection, including the walker that had been ordered for him in April of 2012.

Thereafter, medical staff reviewed an X-ray of Plaintiff's spine that did not reveal any new problems. The imaging was not sufficiently sensitive to detect discitis/osteomyelitis. He was discharged without treatment for the infection.

Between June 2012 and February 2013, Plaintiff submitted more than 30 complaints and/or requests for medical treatment concerning his back pain. He requested an MRI and surgical intervention on several occasions. Many of his complaints were not recorded by staff. Additionally, staff did not accurately and fully record facts affecting his medical care, nor did staff report all of the details concerning his medical problems, including that on several occasions he was found in his cell unable to move after defecating and/or urinating on himself. In response, staff did not order or perform MRI and/or CT scans.

Plaintiff's physical health deteriorated over time due to the spinal infection. He stopped showering, changing his clothes, and even "bird-bathing," due to the pain. He lost control of his bodily functions and suffered frequent involuntary bowel movements and/or urination. Other times, he could not void himself completely. He relied on non-medical staff and cell mates to eat, dress, go to the bathroom and generally care for himself.

Plaintiff's mental health also deteriorated. He became increasingly depressed, hypervigilant, and paranoid. He felt completely helpless and lost all hope of receiving the necessary treatment.

In or around October of 2012, nursing staff failed to accurately report Plaintiff's complaints and facts surrounding his condition, and/or intervene to provide the medical care needed to treat his back. Plaintiff resorted to pleading with a mental health technician about his medical care. The technician reported his complaints to medical staff, but medical staff failed to examine, monitor or test Plaintiff for discitis/osteomyelitis.

In or around December of 2012, Plaintiff was again denied medical treatment when prison nurses failed to fully and accurately report his complaints. Plaintiff resorted to pleading with nonmedical staff including correctional officers Miranda and Pardo. Medical staff refused to examine, monitor, and/or test Plaintiff.

In or around February of 2013, Plaintiff was taken to San Joaquin Community Hospital ("SJCH") for symptoms related to a purported heart attack. Examination by doctors at SJCH revealed significant disc narrowing. An MRI confirmed the presence of discitis/osteomyelitis at the T12-L1 vertebrae. A biopsy revealed scattered soft tissue and bone fragments infiltrated by neutrophils consistent with acute discitis/osteomyelitis. Doctors at SJCH concluded that the infection caused Plaintiff's pain and rendered him paralyzed. SJCH doctors informed Plaintiff that the infection was equivalent to having a broken back. Plaintiff was advised that the infection had spread and eaten away at the vertebrae due to lack of prior treatment by medical staff at CSP. The doctors concluded that surgery was too dangerous, and therefore Plaintiff was placed on an aggressive medication regiment involving the administration of some of the strongest antibiotic prescription drugs available, Vancomycin and Daptomycin.

Between approximately February and April of 2013, Plaintiff was treated for the infection in his spine with antibiotics. A peripherally inserted central catheter ("PICC Line") was subsequently implemented to administer the medication. In or around April or May of 2013, staff at CSP discontinued Plaintiff's antibiotics. They noted an MRI was needed to determine if there was any residual discitis/osteomyelitis, but they did not perform or direct others to perform a MRI or CT scan. The severe pain in Plaintiff's back returned and he was unable to walk again.

In or around May to June of 2013, Plaintiff made a number of complaints of severe back pain that prevented him from moving or walking. He was not examined by medical staff for more than three weeks. When he was finally examined, the pain was so severe that Plaintiff had to be taken back to SJCH.

At SJCH, Plaintiff reported cramps and spontaneous vomiting to medical staff. He said the pain in his back went through his chest. A MRI revealed total obliteration of the disc space

at the T12-L1 vertebra, which had decreased Plaintiff's body height, and diffuse marrow edema, which confirmed residual discitis/osteomyelitis. SJCH medical staff again recommended that Plaintiff undergo antibiotic treatment rather than surgical intervention due to risks of paralysis. Plaintiff was advised that his clinical course for improvement would take longer due to the lack of prior treatment of the infection and surgical intervention. They hoped that a qualified physician could provide corrective lumbar instrumentation after the infection was cured. The recommended use of a custom medical corset, which the CDCR refused to provide because he could not afford to pay the $1,400.00 cost of the brace.

Plaintiff resumed heavy antibiotic treatment in or around July 2013. He continued to experience significant pain and was unable to walk, stand, or lay down for extended periods of time. He worried constantly that the infection would spread, that the potent antibiotics would have lasting consequences, and that paralysis would occur at any moment. Mental health staff noted that he was even more anxious, depressed, agitated, and distressed than in 2012. In diagnosing Plaintiff, they identified his Axis III problems as spinal infection.

In November of 2013, Plaintiff could still not fully ambulate or walk for any significant distance. He was taken to SJCH where a MRI revealed that the infection was subsiding. However, the imaging revealed fusing of the T12-L1 vertebral bodies, canal narrowing, and permanent injuries to his spine. Additionally, staff identified a new area of abnormality on the superior end plate of the T11 vertebrae of Plaintiff's spine, which was confirmed to be a lesion. They believed that it was imperative for an expert in neurosurgery or spinal orthopedic surgery to evaluate Plaintiff for surgical intervention, but the only local surgeon could not perform the surgery. Plaintiff was discharged and returned to CSP without any such evaluation.

Plaintiff's injuries have substantially diminished his quality of life. He can no longer exercise, play handball or engage in yoga. He frequently falls due to an inability to support his own body weight. He cannot walk without support for more than a handful of steps and will never regain the ability to do so. His mental health has increasingly deteriorated. He can no longer work in prison industries which generated income of approximately $600 per month. He has spent approximately $300 for a wheelchair, $46 for a cane, and $53 for a brace. He

must spend approximately $5 per month for medication. He cannot afford the $1,400 necessary to obtain the custom corset prescribed by doctors.

The infection in Plaintiff's spine has led to the development of a lesion on his T11 end plate vertebrae. The lesion could lead to paralysis. The lesion was caused by the spinal infection that went untreated and unidentified by the above named defendants.

Plaintiff raises claims of medical indifference in violation of the Eighth and Fourteenth Amendments to the Constitution against the above named defendants. Plaintiff seeks compensatory, general and special damages in an amount according to proof, but no less than $250,000 against defendants Aye, Moon, Nguyen, Clark, Kim, Smith, Gill, Wang, Garza, Sellers and Does 1 to 50. He further seeks exemplary/punitive damages in an amount sufficient to punish the purposeful conduct and deter similar conduct by defendants Aye, Moon, Nguyen, Clark, Kim, Smith, Gill, Wang, Garza, Sellers and Does 1 to 50. He requests costs for purchasing any medical prosthesis or back corset recommended by prior doctors. He asks for costs of evaluations and surgical intervention from neuro and spinal-orthopedic surgeons not employed by CDCR. He asks for attorney's fees and costs of the suit.

**IV.     ANALYSIS**

    1. <u>Eighth Amendment – Deliberate Indifference</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner

sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

Plaintiff claims that defendants Wang and Aye knew or should have known of the unsanitary conditions of his confinement, and failed to act to prevent the infection that was caused to Plaintiff's spine by the use of unsanitary medical instruments. Plaintiff alleges that Wang and Aye failed to provide appropriate assistance to Plaintiff in his cell to prevent falling. Plaintiff alleges that Wang and Aye, as supervisors, acquiesced to the actions or inactions or the other named Defendants. Plaintiff claims that Wang and Aye failed to intercede on Plaintiff's behalf and provide proper treatment for the infection in Plaintiff's spine.

As to defendants Wang and Aye, Plaintiff fails to demonstrate that Defendants acted

with the requisite state of mind in their response to Plaintiff's medical needs. Plaintiff concedes that Wang and Aye provided care, but claims the care was insufficient or faulty. At most, Plaintiff's claims that Defendants administered unsanitary medical care, or that Defendants did not properly supervise their subordinates in their administration of medical care, amount to negligence or medical malpractice which is not a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1977); Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). An Eighth Amendment claim may not be premised on even gross negligence by a physician. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).[2]

2. Fourteenth Amendment

Plaintiff also claims, without elaboration, that Defendants' actions violated his right to due process under the Fourteenth Amendment. However, "[t]o establish a violation of substantive due process…, a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be

---

[2] The Court also upheld certain claims, many of which have been subsequently dismissed through stipulation or summary judgment. Although not directly at issue in this order, the Court found as follows:
　　Plaintiff presents a cognizable claim of deliberate indifference against defendants Garza and Sellers. Plaintiff states he was in severe pain and made repeated statements to Garza and Sellers of his condition, but Garza and Sellers ignored, failed to respond, and/or failed to accurately record his complaints and requests for care. Plaintiff claims this was despite the fact that Plaintiff was no longer able to walk or care for himself, and was involuntarily defecating and urinating on himself. The needless suffering of pain may be sufficient to demonstrate deliberate indifference. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).
　　Plaintiff presents a cognizable claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment against defendants Aye, Moon, Nguyen, Clark, Kim, Smith, and Gill. Although Plaintiff concedes Defendants provided medical care, his allegations demonstrate that they persistently ignored his complaints of severe pain and the deterioration of his physical condition. Further, Plaintiff alleges that Defendants' medical care and the failure to provide appropriate tests were medically unacceptable under the circumstances, and this course of action was chosen in conscious disregard of an excessive risk to his health. Snow, 681 F.3d at 988.

the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

In this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection…." Patel, 103 F.3d at 874. Therefore, the Eighth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, governs Plaintiff's claims.

## V.    CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant Wang and all claims, except for Plaintiff's claim for violation of his Eighth Amendment right to medical care by defendants Garza, Sellers, Aye, Moon, Nguyen, Clark, Kim, Smith, and Gill, be DISMISSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 5, 2017**        /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE